Entered: August 15, 2013   Case 13-00323   Doc 11   Filed 08/15/13   Page 1 of 7

Date signed August 14, 2013



PAUL MANNES
U. S. BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
Greenbelt Division**

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| VINCENT L. ABELL | : | Case No. 13-13847-PM |
| | : | Chapter 11 |
|         Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| HEDWIG CISSEL | : | |
| MARK CISSEL | : | |
| KAREN CISSEL | : | |
|         Plaintiffs | : | |
|     v. | : | Adversary Proceeding |
| | : | No. 13-00323-PM |
| VINCENT L. ABELL | : | |
|         Defendant | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

**MEMORANDUM OF DECISION**

      This adversary proceeding is before court on the Plaintiffs' Motion for Summary Judgment against the Debtor Vincent L. Abell ("Abell"). Plaintiffs' Complaint seeks a ruling that the May 13, 2009, judgment issued in their favor by the Circuit Court for Montgomery County, Maryland, in the case captioned *Cohn, et al. v. Cissel, et al. v. Abell et al.,* Case No. 262266-V, be excepted from Debtor's discharge. This case was tried before Judge Louise G. Scrivener whose August 1, 2008, opinion and May 13, 2009, judgment were attached as Exhibits 3 and 4 to the Motion. Based on these documents,[1] Plaintiffs contend that summary judgment should be entered in their favor.

---

    [1] Neither side offered a transcript of Judge Scrivener's remarks made in open Court on May 9, 2009, that is referred to in her judgment.

The state court action originated as a foreclosure action. It was consolidated with a suit for rent and possession filed by Abell. Plaintiffs filed a cross-claim against Abell and related entities sounding in fraud growing out of a foreclosure rescue scheme. Plaintiffs allege that the Abell entities represented that they intended to assist the Plaintiffs in refinancing their home. Instead of having their loan refinanced, Abell bought the home for $16,743.02, did not pay off or assume the mortgage obligations, left the mortgage unpaid and as the Plaintiffs' responsibility, and rented the property to Plaintiffs at a price higher than the mortgage payments that they had been unable to make. Abell's defense to these claims was that the Plaintiff Mark Cissel was aware of all the details of the transaction and that he was responsible for any deception of Karen Cissel and his mother because he was embarrassed at the family's financial plight.

Judge Scrivener found that the person who contacted Plaintiffs, David Ato ("Ato"), referred to throughout the trial as a "doorknocker," was at all times acting as an agent under the direction and for the benefit of Abell and with the full knowledge and approval of his principal. Ato combed foreclosure notices and offered to "aid" homeowners in vague terms and draft the documents used in the transactions. He and Abell worked in tandem in 20-25 similar transactions from 2004 to 2006. He typically received a commission of $5,000.00 for each deal. Ato was not an attorney and testified that his knowledge of the process came in large measure from a video he purchased that might have been titled, "Gold Mining in Foreclosures."

The net result of the transaction here as intended by Abell was that the Plaintiffs relinquished title to their home to him and a company wholly owned by him for $5,000.00 cash and $11,742.02 that was used to reinstate the mortgage loan. Abell did not obligate himself to make payments going forward or assume personal responsibility for the mortgage. That responsibility remained as Karen Cissel's. The transaction was handled in such a way that Karen and Hedwig Cissel executed the necessary documents to accomplish the fraud but saw only the signature pages of the documents. At no time in the course of the transaction did Abell's agent explain to Karen or Hedwig Cissel that what they were signing ousted them of ownership. The court found that they thought at all times they were refinancing their home as they had been led to believe. Moreover, the court found that various documents purportedly signed by Karen and Hedwig Cissel were not in fact done so, and that Mark Cissel lacked authorization to act on their behalf.

Abell directed Countrywide Financial Services, the holder of the mortgage on the property, to forward to him all correspondence intended for the Cissels. When Countrywide

initiated a second foreclosure, however, it notified the Cissels, who sprang into action and sought to enjoin the action. Ultimately Abell deeded the property back to the Cissels in 2007.

Judge Scrivener entered judgment in favor of all Plaintiffs against Abell on the Injurious Falsehood - Disparagement of Title Count; in favor of Karen and Hedwig Cissel on the Intentional Misrepresentation Count; and in favor of Karen and Hedwig Cissel on the Intentional Infliction of Emotional Distress Counts. The court found in favor of the Abell entities on the remaining counts.[2]

The monetary awards for which Abell is either individually or jointly and severally responsible, according to Judge Scrivener's Final Judgment dated May 13, 2009, are as follows:

1. In favor of all Plaintiffs for attorneys fees and costs of $193,540.01 (Injurious Falsehood - Disparagement of Title Count);

2. In favor of Hedwig and Karen Cissel, punitive damages of $10,000.00 (Injurious Falsehood - Disparagement of Title Count);

3. In favor of Hedwig Cissel, compensatory damages of $30,000.00 (Maryland Consumer Protection Act and Intentional Infliction of Emotional Distress Counts)

4. In favor of Karen Cissel, compensatory damages of $30,000.00 (Maryland Consumer Protection Act and Intentional Infliction of Emotional Distress Counts)

5. In favor of Hedwig and Karen Cissel, punitive damages of $60,000.00 (Intentional Misrepresentation and Intentional Infliction of Emotional Distress Counts)

6. In favor of Hedwig and Karen Cissel, punitive damages of $15,000.00 (Intentional Misrepresentation and Intentional Infliction of Emotional Distress Counts)

7. In favor of Hedwig and Karen Cissel, attorneys' fees of $98,000.00 (Maryland Consumer Protection Act Count (Fee Shifting Provisions)); and

---

[2]Abell filed a cross-claim against the Cissels asserting a breach of warranty, unjust enrichment, fraud and intentional infliction of emotional distress. The court found that his misconduct was sufficiently related to his net loss so that his claim was precluded by the clean hands doctrine. *Mona v. Mona Electric Group, Inc*., 934 A.2d 450, 474 (Md. App. 2007).

      8. In favor of Hedwig and Karen Cissel, attorneys' fees of $37,240.00

(Discovery sanctions and violations of court orders).[3]

Plaintiffs claim that pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6), these awards are excepted from any discharge of the Debtor. These sections provide:

### 11 USC § 523 - Exceptions to discharge

>    (a) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt—
>      (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>        (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>      (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

Collateral estoppel applies to bankruptcy dischargeability proceedings. *See Groga Garner*, 498 U.S. 279, 284-85 n.11 (1991); *In re Ansari*, 113 F.3d 17, 19 (CA4 1997). When the parties have previously litigated an issue in state court, the Bankruptcy Court applies the collateral estoppel rule of the state. *In re Duncan*, 448 F.3d 725, 728 (CA4 2006). Maryland requires four elements for the doctrine to apply:

    (1) there was a final judgment on the merits in the prior litigation;

    (2) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior litigation;

    (3) the issue decided in the prior litigation is identical with the issue presented in the subsequent litigation;

    (4) the issue actually litigated was essential to the judgment in the prior action.

*Deitz v. Palaigos*, 707 A.2d 427, 434-35 (Md. App. 1998) (citation omitted).

    The first two elements are not in dispute. The issues of fraud and intentional infliction of emotional distress are identical to the issues raised under 11 U.S.C. § 523(a) and (6). These were necessarily litigated in the state court action. The actions of Ato are attributable to Abell, at

---

[3]Some of these awards appear to be redundant but name different codefendants of Abell as joint and several judgment debtors. Nevertheless, all of them name Abell.

whose direction and with his knowledge Ato acted. The net effect of their actions was that in return for $5,000.00 paid to Mark Cissel and $11,743.02 paid to reinstate the mortgage, Karen and Hedwig Cissel were shorn of the equity in their home, while at all times being led to believe that they were refinancing it.

Judge Scrivener quoted the following excerpt from the Court of Appeals decision in *B.N. v. K.K.*, 538 A.2d 1175 (Md. 1988):

> The elements of the cause of action in what is variously known as fraud, deceit, or intentional misrepresentation are:
>
> (1) that a representation made by a party was false; (2) that either its falsity was known to that party or the misrepresentation was made with such reckless indifference to truth to impute knowledge to him; (3) that the misrepresentation was made for the purpose of defrauding some other person; (4) that that person not only relied upon the misrepresentation but had the right to rely upon it with full belief of its truth, and that he would not have done the thing from which damage resulted if it had not been made; and (5) that that person suffered damage directly resulting from the misrepresentation.

*Suburban Mgmt. v. Johnson*, 236 Md. 455, 460, 204 A.2d 326, 329 (1964) [citations omitted]. . Her opinion goes on to explain:

> There are two (2) levels of fraud in this case. The first is the entire process of solicitation and closing whereby broad generalized offers to "help save their house" are used to entice the Cissels, facing the duress of imminent foreclosure, to deal with Ato and Abell. The specific details of the transaction are not set forth in any of the written documents. The Cissels are then given only the signature pages to sign at closing while certain documents, such as the Contract of Sale and Lease Agreement, were never given to Karen or Hedwig.
>
> The Court finds by clear and convincing evidence that Karen and Hedwig have met their burden of proof in establishing that Ato deceived them at the closing about the true nature of this transaction to entice them to sign the paperwork so he could get his commission.
>
> As to the second level of fraud, the Court further finds that all of the Cissels have met their burden of proof in establishing that the overall scheme was fraudulent. Ato and Abell knew that the transaction that was consummated at the closing was not the same transaction into which the Cissels believed they were entering. Even if Mark Cissel knew that his family would have to buy their home back at a higher price after selling it without paying off the mortgage, none of them were aware that the transaction did not obligate Abell to pay the mortgage

pending the repurchase. Even if the Cissels had thought they were selling their house, they never received the consideration under Abell's scheme.

The judgments for intentional infliction of emotional distress are likewise not dischargeable under 11 U.S.C. § 523(a)(6). The test for willful and malicious injury under §523(a)(6) requires only a simple inquiry of whether there exists 'either an objective substantial certainty of harm or a subjective motive to cause harm' on the part of the debtor. *In re Williams*, 337 F.3d 504, 508 (CA5 2003) (quoting *In re Miller*, 156 F.3d 598, 605 (CA5 1998). "[A] debtor must commit an intentional or substantially certain injury in order to be deprived of a discharge." *Id.* at 509. "[I]ntent to injure may be established by showing that the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury." *Texas v. Walker*, 142 F.3d 813, 823 (CA5.1998) (citing *In re Delaney*, 97 F.3d 800, 802 (CA5 1996). Under § 523(a)(6), "willful means deliberate or intentional . . . and malicious means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Matter of Thirtyacre*, 36 F.3d 697, 700 (CA7 1994). '[W]illful and malicious injury' means a deliberate or intentional act in which the debtor knows his act would harm the creditor's interest and proceeds in the [face] of the knowledge." *In re Cunningham*, 59 B.R. 743, 746 (BC.N.D.Ill.1986). As Judge Scrivener pointed out, under Maryland law there are four elements to the tort that the plaintiff must prove:

> (1) The conduct must be intentional or reckless;
> (2) The conduct must be extreme and outrageous;
> (3) There must be a causal connection between the wrongful conduct and the emotional distress;
> (4) The emotional distress must be severe.

*Harris v. Jones*, 380 A.2d 611, 614 (1977). As noted by the District Court, the tort is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct. *Estate of Jones v. NMS Health Care of Hyattsville, LLC*, 903 F. Supp. 2d 323, 329 (D. Md. 2012). The court found that the emotional distress experienced by the Cissels was the underlying result of the underlying fraudulent transaction. Both the compensatory award and the punitive damages imposed are nondischargeable in bankruptcy. *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998).

In conclusion, the court will enter summary judgment in favor of Plaintiffs under both Counts of their Complaint as to the above awards enumerated 1 through 6, but deny the Motion as to the remaining awards. An appropriate order will enter.

cc:
Philip J. McNutt, Esq., 1100 Connecticut Avenue, NW, Suite 340, Washington, DC 20036
Michael G. Morin, Esq., P.O. Box 778, Severn, MD 21144
Raul A. Cuervo, Esq., 777 Brickell Avenue, Suite 500, Miami, FL  33131

**End of Memorandum of Decision**